Michael **FRANKLIN**, Plaintiff,

v.

Thomas R. **ISRAEL** and Allyn R. Sielaff, Defendants.

No. 78–C–386.

United States District Court, W. D. Wisconsin.

April 29, 1982.

Michael Franklin, pro se.

Robert D. Repasky, Asst. Atty. Gen., Madison, Wis., for defendants.

## ORDER

CRABB, Chief Judge.

This is a civil case in which the plaintiff seeks declaratory, injunctive and monetary relief from injuries caused by the alleged deprivation of his due process rights by prison officials. Plaintiff, a prisoner at the Wisconsin Correctional Institution, Waupun, Wisconsin (WCI) (formerly Wisconsin State Prison), is proceeding *pro se* and *in forma pauperis.*

Specifically, plaintiff alleges that he was issued a conduct report, placed in temporary lock-up, found guilty in a hearing and punished, all based on information provided by confidential informants concerning specific incidents, the details of which were withheld from him. Plaintiff claims that defendants' failure to provide him with more information regarding the alleged violations and the identity of his accusers violated his right to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution.[1]

This matter is before the court on defendants' motion for summary judgment. From on the uncontested allegations in the pleadings and the affidavits and documents submitted by the parties, I find there is no genuine issue with respect to any of the following material facts.

## FACTS

In 1972, plaintiff was sentenced to terms totalling thirty-six years for violations of various Wisconsin Statutes. On June 4, 1976, plaintiff was incarcerated at WCI.

On July 27, 1978, plaintiff was transferred from the general population of the prison to Temporary Lock-Up (TLU), a segregated unit. On July 28, 1978, plaintiff was issued a conduct report alleging violations of prison rules 2.03 (threats) and 10.01 (sexual conduct). The report, signed by Lt. F. Mesa, stated the following as the basis for the commencement of disciplinary proceedings:

> This resident is being placed on report for the above rule infractions as a result of numerous complaints received from other resident informants. Identity of these resident informants will be kept confidential per their request. The above resident is accused of threatening other residents with bodily harm if they do not submit to illicit sexual activities with him. This man has repeatedly threatened other residents with rape by force and his current conduct within this institution is directly jeopardizing the safety and security of many other residents. As a direct result of this resident's conduct towards other residents, it has been necessary for many residents to seek protection by requesting placement in Voluntary Segregation. This resident's threats and attempts to force other residents into sexual acts is a constant annoyance to many residents in this institution.

On July 28, 1978, plaintiff demanded a formal hearing on the violations alleged in the conduct report and specifically requested to know what evidence and what witnesses would be used against him. Prison officials refused to identify the informants or the details of any particular situation giving rise to the conduct report, stating that they were concerned that the plaintiff would retaliate against the informants.

The plaintiff was provided with a disciplinary hearing on August 8, 1978, at which he presented three witnesses. He was found in violation of prison rules relating to threats and sexual offenses. The disciplinary committee recommended that plaintiff be placed in adjustment segregation for six days and in program segregation indefinitely. In addition, loss of good time was recommended.

On July 31, 1978, plaintiff sought leave to proceed *in forma pauperis* and this action was commenced shortly thereafter.

## OPINION

A. *Relief, Parties and Issues*

The disposition of elements of this case has been delayed because of this court's

---

1. Plaintiff has simply alleged that defendants violated his right to due process under the Fourteenth Amendment. I construe this allegation as invoking 42 U.S.C. § 1983 as the basis for plaintiff's cause of action. Accordingly, jurisdiction is based on 28 U.S.C. § 1343.

extensive backlog. Consequently, clarification of the available remedies, appropriate parties, and remaining issues is now warranted before a decision on the pending motion may be reached.

### 1. Available relief

■ In his request for relief, plaintiff seeks 1) a declaration that defendants' policies and practices violated his rights; 2) an injunction preventing defendants from punishing plaintiff without his due process rights; and 3) compensatory damages.

With respect to declaratory and injunctive relief, the record indicates that plaintiff currently is in the general population at WCI, having been transferred to Dodge Correctional Institution and back to WCI while this case was pending. As a member of the general population at WCI, plaintiff is no longer suffering any deprivation ordered by the disciplinary committee under the policies or practices at issue here. Moreover, there is nothing in the record to indicate that plaintiff ever lost any good time credit as a result of the disciplinary committee's recommendation.[2] Consequently, plaintiff's request for declaratory and injunctive relief will be dismissed as moot.

### 2. Parties

■ With respect to the claims for monetary damages, plaintiff is required to show the personal involvement of each defendant in order to state a claim under 42 U.S.C. § 1983. *Stringer v. Rowe*, 616 F.2d 993, 1000–01 (7th Cir. 1980); *Adams v. Pate*, 445 F.2d 105, 108 (7th Cir. 1971). Plaintiff has presented evidence that defendant Israel received a letter from another inmate regarding the issues in this case. In addition, there are indications in the record that defendant Israel communicated with plaintiff concerning his placement in TLU. I am persuaded that at this stage of the proceedings, plaintiff has shown sufficient personal involvement on the part of defendant Israel to state a claim against him for money damages under § 1983.

However, plaintiff has made no showing that defendant Sielaff was directly involved in depriving plaintiff of his constitutional rights. Therefore, the claims against defendant Sielaff will be dismissed.

### 3. Issues

In his complaint, plaintiff alleged that he was placed in the TLU without a hearing. In addition, he alleged the failure of defendants 1) to provide him with notice containing specific information about his rule violation; 2) to provide him with an opportunity to call witnesses and present documentary evidence in his defense; 3) to permit him to confront his accusers; and 4) to inform him of the specific evidence used by the disciplinary committee at the hearing on his violation. Plaintiff's complaint regarding all of these issues was filed on July 31, 1978; however, his disciplinary hearing was not held until August 8, 1978. Consequently, at the time of the filing of the pleading, plaintiff was able only to allege facts concerning his placement in TLU and the issuance of the conduct report. The complaint contained no factual allegations concerning any aspects of the disciplinary hearing itself since the hearing had not yet occurred. Leave to proceed *in forma pauperis* was granted on the basis of the allegations in the complaint.

Because plaintiff had sought a preliminary injunction prohibiting defendants from punishing him without due process, a briefing schedule was established on the motion and plaintiff submitted a brief in support of his motion, with attached exhibits. Plaintiff's brief was submitted on August 24, 1978, and was accompanied by exhibits indicating that his disciplinary hearing had taken place and that he had been denied access to the identity of the infor-

---

2. Even if plaintiff were to seek the restoration of good time credits, such relief is properly granted only upon a petition for a writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1972). As a state prisoner, plaintiff would be required to exhaust his state remedies before bringing such a petition before this court. *Rose v. Lundy*, — U.S. —, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

mants and the details of the alleged incidents. These exhibits were not accompanied by an affidavit or other type of authenticating document. Plaintiff's motion for a preliminary injunction was denied on October 28, 1980.

On January 1, 1981, defendants moved for summary judgment. In support of their motion, defendants submitted an affidavit of Gerald Heeringa, Assistant Superintendent of Security at WCI, in which Heeringa put forward his opinion that maintaining the confidentiality of the informers and related incidents was necessary to prevent serious bodily harm to each accuser. Attached to the Heeringa affidavit were the confidential statements and investigative reports on which Lt. Mesa had based his conduct report concerning the plaintiff.

Plaintiff submitted an affidavit in opposition to the motion for summary judgment. Plaintiff's affidavit concerned letters from another inmate which indicated that inmates fabricate claims against other inmates in order to gain favor from prison officials and secure transfers to more desirable institutions.

Because of the particular nature of the submissions by the parties, and the history of this case, the court now is faced with two anomalous situations. First, although the conditions and procedures concerning plaintiff's disciplinary proceeding have been before the court in connection with plaintiff's motion for preliminary injunction and in plaintiff's request for relief, factual allegations concerning the hearing itself were not (and could not have been) part of the complaint itself. Leave to proceed *in forma pauperis* was granted without including the hearing issues and plaintiff never has amended his complaint.

I believe that this first anomaly can be resolved easily by construing aspects of plaintiff's submissions in support of his motion for preliminary injunction to include a motion to supplement his pleadings to proffer the factual allegations concerning the conduct of his disciplinary hearing. Throughout this proceeding, plaintiff has acted without the assistance of counsel and procedural limitations in the presentation of plaintiff's case must be treated accordingly. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Therefore, I will construe plaintiff's subsequent submissions to the court as containing a motion to supplement his complaint and I will grant plaintiff's motion. As supplemented, the complaint alleges that the identity of the informants and the details of the alleged incidents were not revealed to plaintiff before, during or after his disciplinary hearing, and that the disciplinary committee's decision did not contain a sufficient statement of its reasoning and the evidence relied upon.

The second anomalous issue involves plaintiff's failure to make a sufficient evidentiary showing in opposition to defendants' motion for summary judgment. With the exception of the conduct report (attached to the verified complaint) and the two letters attached to plaintiff's affidavit in opposition to the motion for summary judgment, plaintiff has submitted no other documents in a form which may be considered by this court in deciding a motion for summary judgment. This problem is specifically acute in considering whether the disciplinary committee's statement of reasons for its decision and the evidence relied upon by the committee was sufficiently detailed to comport with due process requirements. The only copy of the disciplinary committee's report is that which plaintiff filed in support of his motion for preliminary injunction. However, that copy has not been verified or authenticated in any way and I hesitate to rule on the constitutionality of the contents of a document whose accuracy and authenticity have not been demonstrated.

■ Accordingly, the issue of the constitutional sufficiency of the disciplinary committee's statement of reasons for its decision will not be considered in deciding defendants' motion for summary judgment. This issue has been made a part of this

action, however, and will remain so following the disposition of this motion.[3]

The issues remaining before the court on this motion are as follows:

1) whether defendant violated plaintiff's constitutional rights by placing him in TLU without a hearing;

2) whether the notice (*i.e.*, the conduct report) received by plaintiff concerning the alleged violations was constitutionally sufficient;

3) whether plaintiff was denied the right to call witnesses at his disciplinary hearing; and

4) whether plaintiff's constitutional rights were violated because of his inability to confront his accusers.

### B. *Placement in TLU Without A Hearing*

█ It is uncontested that plaintiff was placed in TLU without a prior hearing. Absent bad faith on the part of prison officials, the short term use of TLU status pending investigation has been held to be constitutional. *Hayes v. Walker*, 555 F.2d 625 (7th Cir. 1977); *LaBatt v. Twomey*, 513 F.2d 641 (7th Cir. 1975).

Plaintiff has made no allegations of bad faith on the part of defendant Israel. Rather, the determination to proceed with the disciplinary steps was made following investigation by staff of the statements given by other inmates. Although there is a factual dispute concerning the trustworthiness of the other inmates' statements, there is nothing in the record to indicate that prison officials had proceeded maliciously against the plaintiff by placing him in TLU.

I conclude that the confinement of plaintiff in TLU pending investigation of his alleged offenses did not violate the Constitution. Defendants' motion for summary judgment on this issue will be granted.[4]

### C. *Notice of Offenses*

In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court considered the application of the due process clause of the Fourteenth Amendment to prison disciplinary hearings. The *Wolff* court held, among other things, that advance written notice of the claimed violation must be provided to prisoners if the minimum requirements of procedural due process are to be satisfied. *Id.* at 563, 94 S.Ct. at 2978. The court did not specify the precise contents of such a notice, but it did indicate that

> [p]art of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact.

*Id.* at 564, 94 S.Ct. at 2978. However, the court recognized that "when personal or institutional safety is so implicated," certain

---

**3.** If the copy of the disciplinary committee's decision submitted by plaintiff is in fact a true and accurate copy, I believe that written decision to have violated plaintiff's constitutional rights. The decision merely states that the committee relied upon the conduct report of Lt. Mesa in reaching its conclusions. The committee makes no attempt to point out any facts upon which inferences were based or to describe why it found the conduct report more credible than the witnesses presented by plaintiff.

The written record of the disciplinary proceedings must be sufficient to enable a reviewing body to determine whether the finding was based on substantial evidence. *Wolff v. McDonnell*, 418 U.S. 539, 564–65, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935 (1974); *Chavis v. Rowe*, 643 F.2d 1281, 1287 (7th Cir. 1981). The written decision of plaintiff's disciplinary committee which is a part of the record in this case

does not appear to comport with this requirement. *See also Gonzalez v. Elsea*, No. 80–C–227, slip op. at 8–14 (W.D.Wis. April 8, 1982).

**4.** In addition to his allegation concerning placement in TLU on July 28, 1978, before being granted a disciplinary hearing, plaintiff also has alleged that he was placed in TLU on July 19, 1978, and released on July 26, 1978 for lack of evidence. Although a sustained pattern of placing inmates in TLU pending investigation and then releasing them a week later would undoubtedly be an unconstitutional practice, I am not persuaded that the incidents involving plaintiff rise to that level. Nor do I believe that seven days confinement is such an inordinately long time as to give rise to a hearing requirement within that period. Accordingly, the decision that plaintiff's rights were not violated by being placed in TLU without a hearing extends to both occasions on which he was so confined.

items may properly be excluded, provided that the omission is noted. *Id.* at 565, 94 S.Ct. at 2979.

█ There are essentially two elements which plaintiff claims were omitted from his notice: the identity of his accusers and the details of the events underlying the accusations. With respect to withholding the identity of the accusers, I believe that the notice comports with constitutional standards. The conduct report indicates that such information is being withheld. In addition, it clearly indicates (although it does not expressly state) that this information is being kept confidential because of the informants' fear of retaliation. It also indicates that prison officials have relied on information presented by more than one inmate.

The omission of the informants' names does not render the notice ineffective as a mechanism to assist the inmate in preparing his defense. Although lack of knowledge of the identity of his accusers will necessarily diminish a prisoner's ability to confront his accuser, the Supreme Court has held that a prisoner has no right to confrontation under the Constitution. *Wolff v. McDonnell*, 418 U.S. at 567–69, 94 S.Ct. at 2980. It does not appear that withholding the identity of informants affects a prisoner's right to prepare his defense in any other way. Therefore, the omission of the identity of the informants from the conduct report did not violate plaintiff's constitutional right to notice of his offense.

It is not equally clear, however, that the failure of defendants to give any information regarding the events triggering the conduct report is constitutional when measured against the *Wolff* standards. *Wolff* requires that the notice be sufficient to enable the prisoner to identify the factual charges and to prepare his defense against those charges. In addition, *Wolff* requires that these minimum due process standards be assessed in light of the rationale that the "touchstone of due process is protection of

the individual against arbitrary action of government." *Id.* at 558, 94 S.Ct. at 2975.

In the conduct report, plaintiff received notice that he was accused of coercing inmates to submit to illicit sexual activities through threats of bodily harm. The report also put plaintiff on notice that the prison officials believed that he had engaged in this illegal conduct more than once over an extended period of time. The report did not, however, identify any specific dates or locations on which any of the incidents which triggered the issuance of the report took place.

Defendants suggest that release of this information would have effectively identified the accusers and placed them in substantial jeopardy. Plaintiff asserts that the failure to provide some detail concerning the actual incidents inhibits his ability to present a defense. Moreover, plaintiff has presented evidence tending to suggest the presence of arbitrariness on the part of the government in bringing these charges.[5]

In ruling on this motion, I do not find it necessary to make a factual determination regarding the accuracy of defendant's claim that release of information concerning specific incidents would identify informants or the sufficiency of the facts on which those assertions are based. Rather, my inquiry focuses on what information must be provided to a prisoner in anticipation of a disciplinary hearing where a significant punishment is at stake and whether that information was provided in this case.

It is clear from *Wolff* that the Constitution requires that a prisoner know enough about the charges against him to be able to defend himself at his hearing. It is equally clear from *Wolff*, however, that where personal or institutional safety is at issue, prison officials may withhold information from an accused prisoner. The *Wolff* court did not develop the details of this interaction and this case presents the difficult problem of developing a standard of peaceful coexistence at the point where these policies conflict.

---

5. Although I make no specific finding regarding the truth of plaintiff's assertions in this regard, I believe they illustrate, at least hypothetically, the need for minimum due process protection for prisoners.

The Court of Appeals for the Seventh Circuit has not yet considered this issue. In the context of cases testing the sufficiency of a disciplinary committee's statement of its reasons for a decision, however, the court of appeals has required that prison officials go beyond a mere statement of reliance upon an officer's report and point out the essential facts upon which inferences were based. *Hayes v. Walker*, 555 F.2d 625, 633 (7th Cir. 1977); *Chavis v. Rowe*, 643 F.2d 1281, 1287 (7th Cir. 1981).

This need for facts is reflected in some of the cases which have ruled on the sufficiency of notice given an inmate. In *Bills v. Henderson*, 631 F.2d 1287, 1295 (6th Cir. 1980), the Court of Appeals for the Sixth Circuit found notice to a prisoner concerning his placement in segregation to be insufficient because it merely referred to a pattern of misconduct, rather than citing the facts which actually triggered the charges against the inmate. The confidential informant problem was not directly at issue in *Bills*[6] and the court had no difficulty finding that the inmate's interest in disclosure was not outweighed by the prison's interest in nondisclosure. *Id.* at 1295. However, the court also noted that specific disclosure "would promote a meaningful hearing and would help to protect inmates from arbitrary government action." *Id.* See also *Edwards v. White*, 501 F.Supp. 8 (M.D.Pa.1979), aff'd 633 F.2d 209 (3d Cir. 1980) (notice informing inmate of charges and their underlying factual basis sufficient to meet *Wolff* standards).

In *Smith v. Rabalais*, 659 F.2d 539 (5th Cir. 1981), on the other hand, the Court of Appeals for the Fifth Circuit emphasized the prison officials' responsibility for maintaining safety within the institution. The *Smith* court held that the inmate did not have the right to the disclosure of information furnished by a confidential informant where prison officials, in their discretion, determined that disclosure of the informa-

tion would identify and endanger the life of an inmate informer. *Id.* at 543–44, 94 S.Ct. at 2968. Essentially, the court of appeals applied a balancing test weighted on the side of discretionary withholding of information by prison officials.

A more detailed set of criteria for determining the contours of the notice requirements under *Wolff* appears in *Rinehart v. Brewer*, 483 F.Supp. 165 (S.D.Iowa 1980), a case with facts similar to the instant case. In *Rinehart*, the plaintiff was accused on the basis of confidential information of making sexual proposals and threatening to harm other inmates; no other specific facts of the offense were alleged. In finding the notice to plaintiff insufficient, the district court set forth the following standards for balancing the conflicting interests in this type of situation:

> The Court believes that notice sufficient to allow a prisoner to prepare a defense must contain the following information:
>
> (1) The date and general time the alleged incident took place, as well as the place the alleged incident occurred;
>
> (2) A general description of the alleged incident itself for which the prisoner is being charged, and the citation for the prison rule allegedly violated; and
>
> (3) The identity of other persons, if any, involved in the incident.
>
> Prison officials, however, may delete from the Disciplinary Notice specific facts concerning the incident if the inclusion of such facts would in and of itself result in security problems for the institution. If certain facts are deleted, the prison officials must state in the Disciplinary Notice that their information has been excluded and that the excluded class of information, such as the identities of other persons involved in the incident, is being deleted because the information in and of itself would result in security problems for the institution.

---

6. The notice in *Bills* was not a specific conduct report but notification to the prisoner that he was being placed in segregation because there was "sufficient cause to believe that his presence in the general population would constitute

a threat to the welfare of other residents and to the good of the institution." The real rationale for isolating the prisoner was that the warden had been notified by informants that plaintiff Bills was planning to take a guard as hostage.

*Id.* at 169. Here the district court seems to have shifted the balance more in favor of the inmate's right to have sufficient information to enable him to prepare his defense. Under the *Rinehart* court's standards, disclosure of the confidential information would be the norm, unless the inclusion of such facts would *in and of itself* result in security problems for the institution.

In finding the notice to plaintiff insufficient under these standards, however, the district court merely concluded that plaintiff "could not prepare his case based upon the limited information provided in the notice." *Id.* It did not discuss whether the inclusion of such facts would in and of itself present security problems.

 I believe that the cases cited above, taken together, stand for the proposition that the Fourteenth Amendment requires issuance of notice which is sufficient to enable the inmate to prepare a meaningful defense, unless prison officials state reasons why special conditions in the prison require a balancing of this right against other rights in a particular case. In framing this statement of the law, I believe, as did the district court in *Rinehart*, that the prisoner's right to specific information concerning the accusations against him must be the starting point for prison officials who attempt to balance this right against a need to protect informants. In effect, the prisoner's right to this information must be overcome in each case by a finding that greater interests will be served through nondisclosure.

In the instant case, the defendants appear to argue that such a burden can be met simply by requests from inmate informants that their identities be concealed. I am not persuaded that such requests in themselves justify the failure to provide the accused prisoner with even the barest details of the incidents of which he is accused. Withholding specific information concerning the offense would greatly inhibit a prisoner's ability to defend himself. On the basis of general allegations, a prisoner could only present character witnesses to testify that they were with the accused much of the time and never saw the type of conduct alleged. Without knowledge of even the date of the alleged incident, the accused inmate has no opportunity to refute the charges against him through the use of simple alibi testimony. Since he is also denied the opportunity to cross-examine his accusers and directly refute the charges, the accused prisoner's methods of defense are extremely limited.

At the same time, it is not clear that a corresponding increase in security is achieved by these limits on the accused's ability to defend himself. For example, if an informant's allegations are, in fact, true, one could reasonably assume that the informant was either a victim or a witness to the incident. A victim's identity would, in all probability, be known to the accused and disclosure of facts concerning the incident would not ordinarily increase the likelihood that a victim would be identified. If the informant were merely a witness to an event, disclosure of specific information regarding the event would not necessarily tend to incriminate a particular witness.

On the other hand, if the informant's story is false, disclosure of the details of the alleged incident will incriminate no one since there was no incident. Such a disclosure will, however, enable a prisoner accused of perpetrating such an incident to account for his time on the day in question and defend successfully against a false allegation.

There are, of course, special situations in which disclosure of facts will implicate an informant. For example, where an accused is believed to have committed several offenses at different times, but only a small number of informants have come forward, identification of the details supplied by those informants would pick them out of the group of victims and witnesses. In this type of situation, the rights of these inmates to protection and the needs of the prison officials to maintain order would outweigh the accused's right to such information. A similar justification for applying this exception might exist if only one of

several possible informants remained in the same institution with the accused. In these situations, failure to disclose the details of the incident would not violate the Fourteenth Amendment as interpreted by *Wolff* and subsequent cases.

■ The identification of this class of exceptions can be stated as a rule in the following manner: inmates are entitled to disclosure of details concerning incidents in which they are accused of wrongdoing *except* where prison officials have made a specific and independent finding that 1) retaliation against an informant will result from his identification; 2) that disclosure of this information will identify the informant; and 3) the identity of the informant would not otherwise be known to the accused. In addition, where the exception to this rule is applicable, the notice shall contain language which informs the prisoner that he has not been provided with the specific details of the incidents charged because prison officials have determined that the information would reveal the identity of informants and present a serious risk to their safety.

I believe this standard to be consistent with the standard developed by the district court in *Rinehart* that material may not be withheld unless, in and of itself, it poses a danger to security. I have set out the standard above in a slightly different manner in the hope that its narrower scope will result in less confusing and more equitable application.

■ Having determined the constitutional standard for notice, I now turn to whether the notice supplied to plaintiff Franklin comports with these requirements. In the instant case, the plaintiff was accused of having committed a number of offenses including threats and sexual advances. Although the number of informants is not entirely clear on the record (because several names have been blacked out), it appears from the confidential material submitted by defendants that the number of informants was quite small compared to the number of alleged offenses. Moreover, prison officials conducted an investigation into the charges

against the plaintiff and made an independent determination that disclosure of details of the incidents involved would present a substantial likelihood of revealing the identities of the accusing inmates and risking their safety.

Plaintiff was not provided with notice that prison officials had made this specific determination; however, I do not believe its omission represents a constitutional violation by defendant Israel. The Constitution requires that prison officials make an independent inquiry and decision concerning the need for withholding information from an accused inmate. Notifying the inmate that relevant information is being withheld as a result of this inquiry is helpful because it provides the inmate with the reason for the omission and facilitates review of official action. Nevertheless, the inclusion of this language in the notice to the inmate is not a constitutional requirement; rather, it is a method of indicating that the constitutional requirement has been complied with. Consequently, failure to include in the notice an adequate explanation for the withholding of information is not, in itself, unconstitutional.

On this record, therefore, I do not believe that plaintiff's constitutional rights were violated by the notice he received of his alleged violations. I emphasize, however, that this situation presents a narrow exception to the rule that inmates accused by confidential informants are entitled to notice of the type of violation charged and the dates of the incidents triggering the accusations.

D. *Right to Call Witnesses and Confront Accusers*

Although plaintiff has claimed a violation of his right to call witnesses at his hearing, there is no dispute that he did in fact call three witnesses on his behalf. Therefore, this claim will be dismissed as frivolous and without merit.

■ Plaintiff has also claimed that he has a right to confront his accusers which was denied him by the defendants. In

**1122**

*Wolff,* the Supreme Court specifically declined to extend the due process clause to provide prisoners with a constitutional right to confront and cross-examine their accusers. 418 U.S. at 567–69, 94 S.Ct. at 2980. The type of situation presented here was singled out by the court as least likely to warrant extension of constitutional protection to include such a right:

> If [the accused inmate] proposes to examine an unknown inmate, the danger may be the greatest, since the disclosure of the identity of the accuser, and the cross-examination which will follow, may pose a high risk of reprisal within the institution.

*Id.* at 568, 94 S.Ct. at 2980.

Accordingly, plaintiff's constitutional rights were not violated by defendant Israel through failure to identify the informants or permit their cross-examination.

### ORDER

IT IS ORDERED that:

1. Plaintiff's motion to supplement his complaint to include allegations that the disciplinary committee's decision did not contain a statement of its reasoning and the evidence relied upon sufficient to comport with the requirements of due process is GRANTED. The supplemental complaint shall consist of part "III" of the section marked "Facts" in plaintiff's "Brief in Support of Motion for Preliminary Injunction," and the attachments labelled "Exhibit A."

2. Plaintiff's claims for injunctive and declaratory relief are DISMISSED as moot.

3. Plaintiff's claims against defendant Sielaff are DISMISSED.

4. Defendant's motion for summary judgment on the issue of the sufficiency of the disciplinary committee's statement of reasons for its decision is DENIED; in all other respects, the motion is GRANTED.

IT IS FURTHER ORDERED that plaintiff's supplemental complaint shall be considered as having been served and filed this date. Defendant Israel may have until May 12, 1982, in which to file a responsive pleading to the supplemental complaint.