RICHARD CEPULONIS vs. COMMISSIONER OF CORRECTION
& others.

Norfolk. January 12, 1983. — February 11, 1983.

Present: GREANEY, KAPLAN, & DREBEN, JJ.

*Practice, Civil,* Extraordinary review. *Imprisonment,* Enforcement of discipline. *Words,* "Reliable evidence."

In an action to obtain extraordinary judicial review of a determination by a prison disciplinary board the judge correctly ordered summary judgment in favor of the defendant correctional officials where the record presented no issue of fact as to the existence of "reliable evidence" supporting the board's conclusion that an inmate, in whose cell various items of contraband were found, possessed escape equipment. [293-295]

Discussion of the standard for judicial review of factual determinations made by the Department of Correction in institutional disciplinary proceedings. [295-296]

CIVIL ACTION commenced in the Superior Court Department on September 12, 1978.

The case was heard by *Garrity,* J., on a motion for summary judgment.

*William S. Eggeling* for the plaintiff.

*Nancy White* for the defendants.

GREANEY, J. Cepulonis commenced this case by a pro se complaint which named as defendants the Commissioner of Correction, three members of a prison disciplinary board (board), and a correction officer. We construe the complaint as seeking review in the nature of certiorari under G. L. c. 249, § 4, of a December 9, 1976, finding of the board that Cepulonis possessed escape equipment. He requested that the finding be invalidated and expunged from his record and that the sanction imposed by the board be rescinded. Counsel was appointed in the Superior Court to

present the case for Cepulonis. After a hearing, conducted primarily on the basis of the record before the board, a judge of the Superior Court allowed the defendants' motion for summary judgment, Mass.R.Civ.P. 56(b), 365 Mass. 824 (1974), and entered judgment accordingly. Cepulonis has appealed.

1. Cepulonis does not contend that the defendants violated any of the procedural due process requirements for prison disciplinary hearings set forth in *Wolff* v. *McDonnell*, 418 U.S. 539 (1974), or that the defendants failed to follow the procedures for disciplinary hearings established by the regulations then in force. See Dept. of Correction, Disciplinary Process, Order No. 4310.1 (May, 1975). He no longer asserts (as he did in his complaint) that findings of prison disciplinary boards are subject to the State Administrative Procedure Act. See G. L. c. 30A, §§ 1(2) and 1A, which make review under G. L. c. 30A unavailable to proceedings conducted by the department. All parties agree that the standard of review governing the board's finding in this case is the one contained in the department's regulations for the conduct of disciplinary hearings which provide that "[t]he board's findings must be based upon reliable evidence . . . ." Cepulonis contends, however, that reliable evidence is lacking to support the board's finding that he possessed escape equipment. The appropriate standard of judicial review in certiorari cases is to be determined according to "the nature of the action sought to be reviewed." *McSweeney* v. *Town Manager of Lexington*, 379 Mass. 794, 800 (1980), quoting from *Boston Edison Co.* v. *Boston Redevelopment Authy.*, 374 Mass. 37, 49 (1977). See *Caswell* v. *Licensing Commn. for Brockton*, 387 Mass. 864, 877 (1983). In this case, we inquire whether the board's findings were supported by reliable evidence on the record as a whole. See *Cambridge Housing Authy.* v. *Civil Serv. Commn.*, 7 Mass. App. Ct. 586, 587-589 (1979).

The uncontroverted evidence before the board established the following. On November 25, 1976, two correction officers conducted a routine check of Cepulonis's room at M.C.I.,

Norfolk and noticed the window weight rope "just hanging." Upon dismantling the window frame, one officer discovered that the rope was tied to a long black sock which contained two screwdrivers, two wirecutters, and pipe sections which could be screwed together. Elsewhere in the room were concealed a jar of "home brew," two straight razors, seventy-one dollars in cash, a dime, and drugs. A number of plastic slip ties of a type used for bundling wires together were also found. The officers claimed the ties were discovered with the other materials in the window frame, while Cepulonis maintained the ties were in the room. At the time of the search, Cepulonis had occupied the room for about two and one-half months. Cepulonis admits to possession of the contraband found in the room itself, but argues that there was no reliable evidence to support the conclusion that the plastic ties were escape equipment or to show that he possessed the items found in the window frame.

Even if Cepulonis's contention about the plastic ties is accepted, no issue of fact is created. The board had the physical evidence before it for inspection. Its members were not required to determine the intended use of each item on an ad hoc basis. Rather, they could look at the entire situation, in the context of the prison environment, to decide whether materials were being amassed which might aid an escape. It could certainly be found that the wirecutters, screwdrivers, sections of pipe and the window weight rope were implements which could be used to escape, that the razors could be used as weapons in an escape attempt, and that the paper money and the dime would be needed if a break were successful. Moreover, the board could infer, based on the nature and probable use of the items seized, the unusual and suspicious appearance of the window, Cepulonis's admission to possession of the other contraband discovered, and the length of time he had occupied the room, that Cepulonis knew of, and had control over, the materials hidden in the window frame. See *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 563, 567-568 (1980).

It was the board's exclusive function to weigh the credibility of the witnesses and to resolve factual disputes between Cepulonis's testimony and that of the correction officers. See *School Comm. of Wellesley* v. *Labor Relations Commn.*, 376 Mass. 112, 120 (1978). See also *Saxon Coffee Shop, Inc.* v. *Boston Licensing Bd.*, 380 Mass. 919, 930 (1980). The affidavit of the chairman of the board establishes that the board rejected Cepulonis's testimony as a matter of credibility. Although the testimony before the board could lead to different inferences, "[a] court may not displace . . . [the] board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Labor Relations Commn.* v. *University Hosp., Inc.*, 359 Mass. 516, 521 (1971). The same analysis applies to the board's function in determining which, if any, of the competing inferences could be drawn from the rusty appearance of some of the metal objects placed in evidence.

2. The meaning of the term "reliable evidence" has not been discussed in our cases, and definitions do not abound elsewhere. See, for one example, *Sowers* v. *Ohio Civil Rights Commn.*, 20 Ohio Misc. 115, 140 (C.P. 1960). Neither is it defined in the department's 1975 regulations, but the superseding 1978 regulations of the department (which continue in effect) provide that "the board may give probative effect only to evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs." 103 Code Mass. Regs. § 430.13(3) (1978). We conclude that evidence meeting this test would be "reliable" within the meaning of the 1975 regulations which control this case. We note, however, that due process may require that prison disciplinary authorities reach their decision on the basis of "substantial" evidence, betokening evidence to a higher level of probability. See *Nolan* v. *Scafati*, 306 F.Supp. 1, 3 (D. Mass. 1969), vacated on other grounds, 430 F.2d 548 (1st Cir. 1970). See also *Chavis* v. *Rowe*, 643 F.2d 1281, 1287 (7th Cir.), cert. denied sub nom. *Boles* v.

*Chavis,* 454 U.S. 907 (1981); *Kritsky* v. *McGinnis,* 313 F.Supp. 1247, 1250 (N.D.N.Y. 1970), aff'd sub nom. *Rodriguez* v. *McGinnis,* 456 F.2d 79 (2d Cir. 1972), rev'd on other grounds sub nom. *Preiser* v. *Rodriguez,* 411 U.S. 475 (1973); *United States ex rel. Speller* v. *Lane,* 509 F.Supp. 796, 800 (S.D. Ill. 1981); *Franklin* v. *Israel,* 537 F.Supp. 1112, 1117 n.3 (W.D. Wis. 1982). Under that standard, a court would look to see if the board's findings are supported by such evidence as "a reasonable mind might accept as adequate to support a conclusion," see *Trustees of Forbes Library* v. *Labor Relations Commn.,* 384 Mass. 559, 568-569 (1981), taking into account whatever in the record fairly detracts from the weight of the evidence. See *Cohen* v. *Board of Registration in Pharmacy,* 350 Mass. 246, 253 (1966). It may be that the requirement of substantial evidence establishes a stricter standard than the requirement of reliable evidence provided by the department's 1975 regulations. It is also arguable that the concept of reliable evidence creates an unfamiliar standard for review which will confuse rather than expedite a just disposition of this sort of proceeding. We need not pass on these questions. As previously noted, the parties agree that "reliable evidence" is the appropriate standard of review in this case. The judge found that the board's findings were supported both by substantial evidence and reliable evidence. Upon our review of the record, we are satisfied that this assessment is correct, and that the judge had not been presented with a material issue of fact which would require further proceedings in the Superior Court.

*Judgment affirmed.*