ROBERT WIGHTMAN vs. SUPERINTENDENT, MASSACHUSETTS
CORRECTIONAL INSTITUTION, WALPOLE, & others.[1]

Norfolk.  November 21, 1984. — March 5, 1985.

Present: ARMSTRONG, KAPLAN, & SMITH, JJ.

*Imprisonment.  Administrative Law*, Regulations, Judicial review, Prison
    disciplinary proceeding.

Evidence before a prison disciplinary board consisting solely of an unsworn
    statement in the disciplinary report of a correction officer, which tended
    to show that the officer, who professed no particular experience with,
    or technical understanding of, the drug "angel dust," took from an inmate
    an unknown substance which he believed to be angel dust, was insuffi-
    cient to support the board's finding that the inmate had committed the
    offense of possessing that substance and hence was punishable by a term
    of fifteen days in isolation. [444-447]

CIVIL ACTION commenced in the Superior Court Department
on January 12, 1983.

The case was heard by *John D. Sheehan, J.,* on a motion
for summary judgment.

*Robert Wightman,* pro se.

*Stephen G. Dietrick* for the defendants.

KAPLAN, J. The plaintiff, Robert Wightman, an inmate at
the Massachusetts Correctional Institution, Walpole, sued the
superintendent of the institution and others in Superior Court,
seeking judicial review of a decision of a disciplinary board
(affirmed on administrative appeal) that he had committed the
offense of possessing "angel dust" and hence was punishable
by "isolation time." Because the record of the proceedings at
the institution is inadequate to support the decision, we reverse
a summary judgment entered below in favor of the defendant
officials. The case is to stand for possible further development.

---

[1] The chairman of the disciplinary board and a named correction officer.

The record, as shown by the materials presented on the motion for summary judgment, starts with a handwritten disciplinary report of June 5, 1982, on a standard form (regulations of the Department of Correction, 103 Code Mass. Regs. § 430.08 [1978]), signed by the defendant correction officer. It states:[2] "On the above date and place at approximately 10:45 PM I c/o Ford did strip search inmate Wightman, and did find on his possession [sic] (pants pocket) four packages and one joint, of an unknown substance (believed to be angel dust). I c/o Ford then turned this into inner control. (Inmate Wightman had a visit this night.)" The offense charged by the report, marked "Major," was "Possession of an unauthorized controlled substance" (this appears as number 10 of inmates' punishable offenses listed at § 430.22).

A copy of the disciplinary report was furnished to the plaintiff together with a "Notice of Disciplinary Hearing" (§ 430.11) stating that a disciplinary board would hold a hearing on the report on June 21, 1982, and inviting the plaintiff to attend. A report of the hearing (§ 430.17[1]) indicates that it was held on the date set, before a board of three, one of whom was the defendant chairman. The plaintiff was in attendance. The substance of the hearing is described thus. "Plea: Not guilty. No comment by inmate. Finding: Guilty. Sanction and recommendations: 15 day Iso. Reasons for sanction and recommendation: D-report taken to be accurate and truthful — severity of this incident warrants strict sanction."

Informed that isolation was to begin on July 5, 1982, the plaintiff on that day wrote to the superintendent protesting that he had not received the board's report, which by regulations he was entitled to have within two weekdays after the close of the hearing (§ 430.17[1]); thus he had not been able to take a proper appeal to the superintendent, which was required to be filed within five days after receipt of the hearing report (§ 430.18[1]). In response, the superintendent treated the letter of July 5, 1982, as the taking of an appeal (meanwhile suspend-

[2] We take the liberty of improving on the punctuation and capitalization of the original.

ing the isolation time); and on July 27, 1982, he denied the appeal, i.e. affirmed the action of the disciplinary board. The plaintiff served fifteen days of isolation commencing on August 2, 1982.

Although inartfully drawn — the plaintiff appears pro se — and innocent of reliance on G. L. c. 249, § 4, the complaint in the present action is to be read under the statute as a "civil action in the nature of certiorari"[3] which brings up the administrative record[4] and questions the legality of the official conclusion. See *Hill* v. *Superintendent, Mass. Correctional Inst., Walpole,* 392 Mass. 198, 199 n.2 (1984), cert. granted, 469 U.S. 1016 (1984); *Cepulonis* v. *Commissioner of Correction,* 15 Mass. App. Ct. 292, 293 (1983). The main charges of illegality (pieced out of the pleading) are that the conviction did not comport with the applicable regulations of the Department of Correction and in any event was unconstitutional as violating State and Federal due process guarantees.

It is logical and orderly in the present case to take up first the claimed violation of local law in the form of the regulations. See *Royce* v. *Commissioner of Correction,* 390 Mass. 425, 426 (1983). Not only is this sequence of analysis generally logical; in some situations, at least, it may be required, as suggested by Justice Stevens, concurring in *Massachusetts* v. *Upton,* 466 U.S. 727, 735-739 (1984). In fact the present appeal is disposed of without need to invoke either Constitution.

Regulations adopted pursuant to G. L. c. 124, § 1(*q*), provide, as far as material here, that an inmate appearing at a disciplinary board hearing, and pleading not guilty, may choose

---

[3] The State Administrative Procedure Act does not apply to these disciplinary proceedings in correctional institutions. G. L. c. 30A, §§ 1 (2), 1A. (However, we make analogical use of one of the Act's provisions below in this opinion.)

[4] There is no dispute here about what the official record consists of; hence we need not consider the argument that the superintendent's affidavit setting out or referring to the record is not on "personal" knowledge. Compare Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974). We limit ourselves to the record and disregard averments by the superintendent such as that inmates have used the "ploy" that they have not received notice of the action of the disciplinary board.

to remain silent (§ 430.14[1]); that the burden of proof is on the "proponent" of a disciplinary report and a disciplinary board is to make its finding on the basis of the "preponderance" of the evidence (§ 430.16 [1]), so that, for "conviction," the proof need not be brought to the level of "beyond a reasonable doubt" as required for ordinary criminal convictions; and, finally, that, while the board is not bound by courtroom rules of evidence, it may admit and accord probative value only to the kind of evidence on which "reasonable persons are accustomed to rely in the conduct of serious affairs" (§ 430.13[3]). The latter definition equates with the one set out in the State Administrative Procedure Act, G. L. c. 30A, § 11(2),[5] and the effect of the definition is that the "agency finding must be supported by substantial evidence." *Goodridge* v. *Director of the Division of Employment Security,* 375 Mass. 434, 436 (1978).[6]

As has now been repeatedly held, and lastly in this court in the case of *Yerardi's Moody Street Restaurant & Lounge, Inc.* v. *Selectmen of Randolph, ante* 296, 300 (1985), the standard of judicial review under the certiorari statute takes its color from the nature of the administrative action that is being examined. See *Caswell* v. *Licensing Commission for Brockton,* 387 Mass. 864, 877 (1983); *Cepulonis,* 15 Mass. App. Ct. at 293. Here the cue is the agency's own definition of admissible evidence or — what may amount to virtually the same thing — the derived description of the weight of the proof required to support the agency's finding. Thus we have to consider on either score the adequacy of the accusatory document — the disciplinary report of the correction officer — upon which alone the disciplinary board rested in reaching its decision. In examining this matter we do not ask whether as board members

---

[5] "Evidence may be admitted and given probative effect only if it is the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs." G. L. c. 30A, § 11(2), inserted by St. 1954, c. 681, § 1.

[6] The previous regulations (1975) spoke of "reliable" evidence and the *Cepulonis* case discussed whether that might betoken a standard somewhat lower than "substantial." 15 Mass. App. Ct. at 295-296.

(or superintendent) we would or would not have received a given document as complying with the regulation or as proof enough for conviction. We carry out our function by setting ourselves somewhat at a distance from the agency, by exercising a kind of Olympian detachment. This is to say that the agency is to have the benefit of any genuine doubt as to its conformance to the constraints laid upon it. See *Cepulonis,* 15 Mass. App. Ct. at 295.

Considered even with this bias, the agency's action cannot stand. Here we have an unsworn statement by a person professing no particular experience with, or technical understanding of the drug, who concedes on the face of the report that the substance is "unknown," and who does no more than express a "belief." True, the officer states that he personally retrieved the substance and thus must have seen it, but that does not carry the matter much further. Our view that such an accusatory statement, standing alone, is not adequate evidence, and is insufficient ground for the board's finding herein, is confirmed by decisions of courts elsewhere reviewing like findings of prison boards. See *Barker* v. *State,* 437 So.2d 1375 (Ala. Cr. App. 1983); *Jones* v. *Smith,* 120 Misc. 2d 445, 451-452 (Sup. Ct. 1983), aff'd, 101 A.D. 2d 705 (N.Y. 1984); *Matter of Kincaide,* 86 A.D. 2d 893 (N.Y. 1982); *Matter of Jennings,* 99 A.D. 2d 635, 636 (N.Y. 1984); *Garcia* v. *Lefevre,* 102 A.D. 2d 1004, 1005 (N.Y. 1984); *State ex rel. Meeks* v. *Gagnon,* 95 Wis.2d 115, 122 (Ct. App. 1980); *Green* v. *Nelson,* 442 F. Supp. 1047, 1058 (D. Conn. 1977).[7] Although, as earlier mentioned, we need not reach any constitutional issues, it is instructive that the constitutional requirement of the leading case of *Wolff* v. *McDonnell,* 418 U.S. 539, 563 (1974), that prison boards shall provide "a written statement of the factfinders as to the evidence relied upon" in reaching decisions,[8] has on occasion itself been held violated where the

---

[7] In *Kincaide* and *Jennings* tests had been carried out on the drugs, but the court thought not enough had been shown about the procedures used in the testing.

[8] Title 103 Code Mass. Regs. § 430.17(1)(a) (1978), requires such a statement.

evidence referred to has consisted merely of a report such as the one we have at bar. See *Hayes* v. *Walker,* 555 F.2d 625, 631-633 (7th Cir.), cert. denied, 434 U.S. 959 (1977); *Chavis* v. *Rowe,* 643 F.2d 1281, 1286-1287 (7th Cir.), cert. denied sub nom. *Boles* v. *Chavis,* 454 U.S. 907 (1981). Cf. *McCollum* v. *Miller,* 695 F.2d 1044, 1048-1049 (7th Cir. 1983); *Green,* 442 F. Supp. at 1058. Also instructive is the fact that the regulations governing disciplinary proceedings in Federal prisons do not permit conviction merely on the basis of such accusatory instruments. See 28 C.F.R. §§ 541.17(f), 541.17(i) (1984).

We hardly need to add that the upshot of our decision in the present case is not that laboratory or other testing will be needed in all future drug cases where the inmate chooses to put the "proponent" to its proof. See *Barker,* 437 So.2d at 1376. Where testing is simple, and at hand, of course the agency may prefer to use it. But in many cases, no doubt, the drugs will be such as to be identifiable, without scientific analysis, by the testimony of lay persons with fair experience of them, whether they be officers making the disciplinary reports or board members or others. Evidence of the circumstances in which the substances were discovered may assist in the proof. It may be well to put the actual seized drugs before the board at the time of hearing. Live testimony of the officer filing the disciplinary report may enhance the value of the report, and sworn statements, live or in writing, are better than unsworn.

The point of our present decision is that the disciplinary report was "not . . . self validating." See *McCollum,* 695 F.2d at 1049.

The summary judgment is vacated, and the case is remanded to the Superior Court. Within thirty days of the going down of the rescript, the defendants will signify to the judge of the Superior Court whether they propose to reinstitute a hearing before a disciplinary board and seek to offer additional proof. If the defendants signify in the negative, it will be open to the plaintiff to move for relief which will include a direction to the defendants to cause any record of the plaintiff's conviction to be expunged. If the defendants signify in the affirmative, the

judge of the Superior Court will remand the matter to the agency for appropriate action there. Thereafter, if necessary, further proceedings consistent with this opinion will be had in the Superior Court.

*So ordered.*