NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-227                                        Appeals Court

SHAWN SHEA  vs.  DEPARTMENT OF CORRECTION & others.[1]


No. 22-P-227.

Suffolk.     February 14, 2023. - September 18, 2023.

Present:  Henry, Shin, & Hodgens, JJ.


Imprisonment, Enforcement of discipline.  Mail.  Intent.
    Evidence, Intent.  Administrative Law, Prison disciplinary
    proceeding, Substantial evidence.  Practice, Civil, Action
    in the nature of certiorari.



Civil action commenced in the Superior Court Department on
October 14, 2021.

The case was heard by Rosemary Connolly, J., on motions for
judgment on the pleadings.


Matthew J. Koes for the plaintiff.
Connor C. Tarr for the defendants.
Joel Thompson, for Harvard Prison Legal Assistance Project,
amicus curiae, submitted a brief.


HENRY, J.  This case raises the question whether an

inmate's acceptance of what appeared to be legal mail can

_____

[1] Commissioner of Correction and the superintendent of the
Massachusetts Correctional Institution, Norfolk.

constitute sufficient evidence that the inmate intended to introduce contraband contained therein into the facility.  The plaintiff, Shawn Shea, an inmate at the Massachusetts Correctional Institution, Norfolk (MCI-Norfolk), brought this suit against officials of the Department of Correction (department) seeking injunctive relief and certiorari review of a department disciplinary decision.  He now appeals from a Superior Court judgment dismissing the complaint on the parties' cross motions for judgment on the pleadings.  We reverse.[2]

Background.  We summarize the pertinent facts, which are not in dispute.  On June 19, 2021, MCI-Norfolk received correspondence addressed to the plaintiff.  The mailing address included typographical and capitalization errors.[3]  The return address, to the "Law office of Robert Berk," contained similar errors and listed a telephone number.  In accordance with 103 Code Mass. Regs. § 481.11 (2022), Inner Perimeter Security (IPS) Officer Joshua Malonson allowed the plaintiff to view the envelope before signing for it; this meant that the plaintiff was given the opportunity to review the exterior of the

---

[2] We acknowledge the amicus curiae brief submitted by the Harvard Prison Legal Assistance Project.

[3] Specifically, the street name, the city name, and the abbreviation for Massachusetts were not capitalized, and there were no spaces between the street number and name and between the city and the abbreviation for Massachusetts.

correspondence, including the mailing and return addresses. After the plaintiff reviewed the exterior of the correspondence, he acknowledged receipt of it by signing a legal mail confirmation form.[4]

Malonson then opened the envelope. Its contents included a golden-colored envelope containing a letter purporting to be from the "Anthony F Clune &Robert Berk Law Office," which referenced a court case against a different individual, and a printout of a decision of this court in that matter. Malonson reported that "[t]he paper[s] appeared to have been previously wet and dried." The correspondence was secured and brought to the IPS office for further inspection and was tested using a "NARK II field test," which returned a positive result for synthetic cannabinoids, a controlled substance. The department investigated the correspondence to determine who sent it. The department contacted Clune, who stated that he did not represent the plaintiff and had never worked with an attorney named Robert

---

[4] The legal mail confirmation form consisted of fields calling for an inmate's printed name and signature, the date when the inmate was notified of the arrival of the mail, the date when the inmate picked up the mail, and the inmate's commitment number.

Berk.[5]  The department's search for Robert Berk revealed a retired attorney, Robert Berks,[6] who resides out of State.

The plaintiff was moved to the restrictive housing unit, where he was placed on "awaiting action status" until the issuance of the disciplinary report.  On June 29, 2021, the plaintiff signed a waiver relinquishing his opportunity to have a confirmation test performed on the initial results of the NARK II field test.  By waiving this opportunity, the plaintiff acknowledged that he understood that the initial test could be used as evidence against him in a disciplinary proceeding.

A disciplinary hearing took place on July 15, 2021, before a hearing officer.  The plaintiff represented himself and did not request any witness testimony.  His defense was that there was nothing connecting him to the lawyers referred to in the legal mail or the area in Massachusetts from which the mail was sent.  He explained at the hearing that he had previously received letters from unknown attorneys and he does not know who

---

[5] The Board of Bar Overseers' (BBO) website lists only one attorney with the name Anthony Clune.

[6] It is unclear whether the different spellings are the result of a typographical error or whether the attorney who the department discovered was a different person from the one listed on the return address.  The BBO website lists Robert J. Berks as a retired attorney and has no listing for a Robert Berk.

the lawyers are until he receives the first letter from them.[7]
In a written decision, the hearing officer found, by a
preponderance of the evidence, that the plaintiff was guilty of
both the attempt to introduce and the introduction of a
controlled substance into the facility, with all other charges
being dismissed as either duplicative or unsupported by the
record.[8]  The hearing officer considered Malonson's "written
report . . . in conjunction with the legal mail confirmation

---

[7] This is consistent with the policy of the Committee for
Public Counsel Services.  See, e.g., Committee for Public
Counsel Services, Assigned Counsel Manual Policies and
Procedures, Performance Standards Governing Representation of
Indigents in Criminal Cases, § 4.B.1.c.iii ("the attorney must:
(1) write to the client within three business days of receiving
the assignment and advise the client that s/he has been assigned
to the representation"); Performance Standards Governing
Representation of Clients on Criminal Appeals Post-Conviction
Matters, § 4.F.2 ("Immediately upon receipt of the assignment
. . . [the appellate defender must] communicate with the client
to inform the client of the assignment") (June 12, 2023),
https://www.publiccounsel.net/wp-content/uploads/2023/06
/Assigned-Counsel-Manual-4.pdf [https://perma.cc/B7TG-RDBU].

[8] The plaintiff was charged with:  "Introduction,
distribution or transfer of any narcotic, controlled substance,
illegal drug, unauthorized drug or drug paraphernalia";
"Attempting to commit any of the above offenses"; "Unauthorized
use or possession of drugs . . . unauthorized drugs or drug
paraphernalia"; "Conduct which interferes with the security or
orderly running of the institution"; "Attempting to commit any
of the above offenses"; "Receipt or possession of any contraband
of items not authorized for retention by inmates"; "Conduct
which disrupts the normal operation of the facility or unit";
"Attempting to commit any of the above offenses"; "Receipt or
possession of contraband"; "Use of mail or telephone in
violation of established regulations"; "Violating any
departmental rule or regulation . . . of an institution"; and
"Attempting to commit any of the above offenses."

form, available photos, field test, photocopies, emails and the [plaintiff]'s statement."[9]  The hearing officer found:

> "The legal mail confirmation form and disciplinary report confirm the [plaintiff]'s admission that he did sign for the mail.  The photos, field test and photocopies confirm the items . . . did contain synthetic cannabinoids as indicated by the field test.  The email shows that the attorney confirms he did not represent [the plaintiff] and that the attorney has no connection to the attorney listed on the return address.  The [plaintiff] does not dispute signing for the legal mail . . . [and] acknowledges that he did have an opportunity to view the legal mail prior to signing for the item."

As a result of the guilty finding, the plaintiff was ordered to undergo and pay for two years of mandatory substance abuse monitoring at a cost of $288 and suffered a loss of canteen privileges for 120 days.

The plaintiff appealed the decision to the superintendent of MCI-Norfolk pursuant to 103 Code Mass. Regs. § 430.18(1) (2019).  After the superintendent denied the appeal, the plaintiff filed a complaint in the Superior Court, pursuant to G. L. c. 249, § 4, seeking injunctive relief and certiorari review.  On cross motions for judgment on the pleadings, the motion judge issued a judgment denying the plaintiff's motion, allowing the motion filed by the department and affirming the disciplinary decision of the department.  This appeal followed.

---

[9] The reporting officer was present for the hearing but did not testify.

Discussion. Prisoners may challenge the adverse findings of a disciplinary board through an action in the nature of certiorari pursuant to G. L. c. 249, § 4. "Our review of a disciplinary proceeding is based on whether the record contains substantial evidence to support the hearing officer's decision." Puleio v. Commissioner of Correction, 52 Mass. App. Ct. 302, 305 (2001). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion, . . . taking into account whatever in the record fairly detracts from the weight of the evidence" (citation and quotation omitted). Cepulonis v. Commissioner of Correction, 15 Mass. App. Ct. 292, 296 (1983).

The court may not displace the hearing officer's "exclusive function to weigh the credibility of the witnesses and to resolve factual disputes" in the testimony. Cepulonis, 15 Mass. App. Ct. at 295. However, we need not defer to the hearing officer's decision "[w]here the evidence is so limited and problematic" that it cannot support such a decision. Jordan v. Superintendent, Mass. Correctional Inst., Cedar Junction, 53 Mass. App. Ct. 584, 589-590 (2002).

The department argues that the hearing officer's decision was supported by substantial evidence. The department points to the plaintiff's acceptance of the mail after observing the errors in the return and mailing addresses, arguing that they

were "obvious red flags as to the legal mail's authenticity," and the fact that the plaintiff admits he had no connection to the attorney named on the return address. The department also argues that the plaintiff had the opportunity to decline the legal mail if he did not know the sender. The department contends that the "best-case scenario is that [the plaintiff] is agreeing to take possession and control of an unknown package with the hope that it contains contraband."

The plaintiff challenges the sufficiency of the evidence, arguing that mere acceptance of the mail was insufficient to constitute substantial evidence to support the hearing officer's conclusion that the plaintiff intended to introduce contraband into the facility. As the plaintiff contends, while the plaintiff was able to view the outside of the envelope before he accepted it, the department presented no evidence that the plaintiff was able to inspect its contents before signing for it. We thus agree that this circumstance is insufficient to show that he intended to introduce contraband into the facility.

It is true that an inmate's knowledge and intent to exercise dominion and control over an item of contraband can be inferred from possession. See Puleio, 52 Mass. App. Ct. at 306 (concluding that hearing officer's decision was supported by substantial evidence where contraband was discovered in inmate's jacket pocket); Cepulonis, 15 Mass. App. Ct. at 294 (knowledge

and control over contraband could be inferred from discovery of contraband in inmate's cell, which he had occupied for two and one-half months).  However, mere acceptance of privileged mail does not constitute sufficient evidence that an inmate knowingly attempted to introduce contraband into the facility.[10]  See Jordan, 53 Mass. App. Ct. at 588-589 (finding insufficient evidence of plaintiff's knowledge of or control over piece of metal concealed in newspaper that was deposited in plaintiff's cell by another inmate).  Compare Puleio, 52 Mass. App. Ct. at 305-306 (substantial evidence found where inmate "admi[tted] that he probably brought the [contraband] with him from his confinement" at another facility); Cepulonis, 15 Mass. App. Ct. at 294 (substantial evidence found where inmate "admi[tted] to possession of . . . other contraband discovered").  The hearing officer essentially concluded that, because the plaintiff did not reject the mail, he arranged for it to be sent to him or hoped it contained contraband.  Knowledge cannot be imputed to the inmate without some evidence, such as an admission to such

_____

[10] The department's current standard operating procedure, amended in July 2022, acknowledges as much, by providing that "[a]n inmate's decision to decline to sign for, or decision to accept, privileged mail, standing alone, shall not constitute sufficient evidence that the inmate attempted to introduce contraband" (emphasis added).  Department of Correction Standard Operating Procedure (SOP) for Privileged Mail § VI(c) (July 2022), https://www.mass.gov/doc/481-sop-privileged-mail /download [https://perma.cc/LFD4-G6S2].

an arrangement or some other circumstantial evidence.  Disbelief of the plaintiff's statement is not affirmative evidence to the contrary.  See New Boston Garden Corp. v. Assessors of Boston, 383 Mass. 456, 472 (1981).  Requiring inmates to reject mail from an attorney who is unknown to them or because the envelope has typographical errors, lest they risk discipline for accepting the contents, raises serious concerns with an inmate's constitutional right to counsel.[11]

The judgment in favor of the department is vacated.  Within thirty days of the issuance of the rescript, the department will inform the judge of the Superior Court whether it proposes to reinstate a hearing before the disciplinary board to offer additional proof.  See Jordan, 53 Mass. App. Ct. at 590; Wightman v. Superintendent, Mass. Correctional Inst., Walpole, 19 Mass. App. Ct. 442, 447 (1985).  If not, the plaintiff may

---

[11] While there were typographical errors on the outside of the envelope, no evidence was produced to indicate that the plaintiff should have known it was not sent from an attorney or that the contents contained drugs.  Regardless, the hearing officer did not make a finding about the typographical errors or rely on them in her decision.  Nor did the underlying disciplinary report mention the typographical errors.  We review an agency decision based on the reasons given in that decision, not reasons supplanted by counsel on judicial review.  See John Doe, Sex Offender Registry Bd. No. 58574 v. Sex Offender Registry Bd., 98 Mass. App. Ct. 307, 313 (2020), quoting Department of Homeland Sec. v. Regents of the Univ. of Cal., 140 S. Ct. 1894, 1909 (2020) ("The basic rule . . . is clear:  An agency must defend its actions based on the reasons it gave when it acted").

move for relief, including expungement of the disciplinary report, the hearing officer's decision, and all references thereto.[12]

So ordered.

_____

[12] The plaintiff also argues that the hearing officer's findings were not supported by substantial evidence because the department could not prove the reliability of the NARK II field test or that Malonson was qualified to administer the NARK II test.  In a 2021 Superior Court decision, Green vs. Massachusetts Dep't of Correction, Mass. Super. Ct., No. 2184CV02283-C (Suffolk County Nov. 30, 2021), a judge found that "the NARK II Test, by itself, is a highly unreliable means of determining whether a particular mail item actually contains any illicit synthetic cannabinoids."  Our decision does not turn on the reliability of the NARK II test, and we take no position with respect to the merits of that matter.  We do note that the department's current SOP, as amended in July 2022, states that no inmate may be disciplined "for introduction of contraband until a test from an outside laboratory is conducted and returns a positive result regarding the privileged mail, and sufficient evidence exists that the inmate attempted to introduce contraband."  Department of Correction SOP for Privileged Mail, § VI(b).