JOHN AVERETT *vs.* COMMISSIONER OF CORRECTION & another[1]
(and a companion case[2]).

Nos. 87-1284 & 87-1301.

Middlesex. November 23, 1987. — January 15, 1988.

Present: PERRETTA, SMITH, & FINE, JJ.

Further appellate review granted, 402 Mass. 1102 (1988).

*Imprisonment,* Good conduct deductions. *Practice, Criminal,* Postconviction relief. *Habeas Corpus. Administrative Law,* Prison disciplinary proceeding.

The exclusive vehicle for postconviction relief for a prisoner who alleges that he is unlawfully confined is a motion under Mass.R.Crim.P. 30 (a). [282-285]

Habeas corpus proceedings brought by two prisoners seeking immediate discharge from confinement were to be treated as motions under Mass. R.Crim.P. 30 (a) for postconviction relief, and a judge's order granting relief was appealable under Mass.R.Crim.P. 30 (c) (8) by the respondent correctional officials. [286]

On an appeal by respondent correctional officials from orders of a Superior Court judge granting postconviction relief to two prisoners who alleged that they were unlawfully confined, there was no merit to the respondents' contention that the forfeiture of the prisoners' statutory good time credits was reviewable only by means of a proceeding in the nature of certiorari. [286-287]

In proceedings by two prisoners challenging the forfeiture of their statutory good time credits, there was no merit to their arguments that prison administrators could not, as expressly authorized by 103 Code Mass. Regs. § 430.21, modify the time limit for filing certain inmate disciplinary reports, upon which the forfeitures were based, nor, in the circumstances, were the time extensions arbitrary or unreasonable. [287-288]

Substantial evidence supported the conclusion of a prison disciplinary board that two prisoners in a correctional institution had participated in an

[1] Superintendent, North Central Correctional Institution, Gardner (NCCI, Gardner).

[2] Daniel Megguier *vs.* Commissioner of Correction and Superintendent, Massachusetts Correctional Institution, Cedar Junction (MCI, Cedar Junction).

unauthorized group demonstration, for which the board recommended forfeiture of the prisoners' statutory good time credits. [288-289]

PETITIONS filed in the Superior Court Department on September 24, 1987, and October 28, 1987, respectively.

The cases were heard by *Joseph S. Mitchell, Jr., J.*

*Judy G. Zeprun,* Assistant Attorney General (*William R. Albert* with her) for the respondents.

*Peter Costanza* for the petitioners.

PERRETTA, J. Claiming that they had served in full the sentences imposed on their convictions but that the Commissioner of Correction (commissioner) had ordered the forfeiture of their statutory good time credits in violation of their rights, the inmate petitioners sought their "immediate release" in the Superior Court on petitions for writs of habeas corpus brought under G. L. c. 248, §§ 1, et seq. After hearings, the judge allowed the petitions, issued the writs, and denied the commissioner's requests for a stay of the final orders pending an appeal. The commissioner next sought stays from single justices of this court, who also denied the requests and ordered that the matters be consolidated and expedited for presentation to a panel of the court. We conclude that relief under G. L. c. 248 was unavailable to the petitioners and treat their petitions as motions brought under Mass.R.Crim.P. 30(a), 378 Mass. 900 (1979). As the petitioners were not entitled to the postconviction relief they sought, we vacate the judgments.

I. *Background.*

We briefly relate those events which led to the issuance of the petitioners' writs. On May 13 and 14, 1987, between 200 and 250 inmates at the Massachusetts Correctional Institution at Norfolk (MCI, Norfolk) participated in an unauthorized group demonstration. The inmates marched throughout the institution chanting "unity," "work strike," and "Attica." Correctional officers evacuated all nonsecurity personnel, called for additional security officers, and cancelled all visitation as well as educational and other programs. The petitioners were identified as participants in the demonstration.

There were numerous transfers of inmates to other correctional facilities for the purpose of quieting the situation at MCI, Norfolk. The petitioner Averett was sent to NCCI, Gardner, and the petitioner Megguier was transferred to MCI, Cedar Junction. Hearings were held before the disciplinary board (the board) after which the board recommended, and the commissioner approved, the loss of 200 days of earned good time for both the petitioners.

As a result of the forfeiture, the petitioner Averett's good conduct discharge (GCD) date was changed from July 24, 1987, to February 12, 1988. The petitioner Megguier's GCD date was moved from October 22, 1987, to May 9, 1988. Neither of the petitioners promptly sought judicial review of the board's decision pursuant to G. L. c. 231A, or c. 249, § 4. Rather, each waited until after the expiration of his original GCD date to bring a petition for a writ of habeas corpus.

Although the petitions were filed separately and on different dates, they were heard by the same judge, who gave no explanation of his reasons for (in each instance) restoring the good time credits, allowing the petition, and ordering the issuance of the writ. The petitioner Megguier was discharged from the custody of the respondents and released from MCI, Cedar Junction. The petitioner Averett was also released from the custody of the named respondents but was held at the Bristol County House of Correction for completion of another sentence upon which he was required to serve three days. Both the petitioners were at liberty when the commissioner requested stays of the judgments from the single justices.

II. *Availability of Habeas Corpus Relief.*

By its own terms, G. L. c. 248, § 1, "bars one who 'has been convicted or is in execution upon legal process, civil or criminal' from obtaining the writ as of right." *McCastle, petitioner,* 401 Mass. 105, 106 (1987). Prior to 1979, however, a Superior Court judge, acting under G. L. c. 248, § 25, could "use his discretionary power to issue the writ in controversies involving the number of deductions due if he . . . [found] an entitlement to the deductions in question; and if, after recomputation of the expiration date of petitioner's sentence, he . . .

[found] an entitlement to immediate release. See *Beaton, petitioner,* 354 Mass. 670 (1968); *Stearns, petitioner,* 343 Mass. 53, 57 (1961)." *Pina* v. *Superintendent, Mass. Correctional Inst., Walpole,* 376 Mass. 659, 664-665 (1978).

As of July 1, 1979, a judge no longer has the discretionary power to issue a writ pursuant to § 25. That power was removed from § 25 by St. 1979, c. 344, § 12, made effective by § 51 of c. 344, on July 1, 1979, also the effective date of the Massachusetts Rules of Criminal Procedure. The significant sentence of § 25, as amended, reads: "The court shall have no power to issue a writ of habeas corpus, at its discretion for . . . a person who is imprisoned or restrained of his liberty pursuant to a criminal conviction." See also *McCastle, petitioner,* 401 Mass. at 106-107.

Relief afforded by § 25 prior to its amendment is now available under Mass.R.Crim.P. 30(a), 378 Mass. at 900. That rule provides: "Whoever is imprisoned or restrained of his liberty pursuant to a criminal conviction may at any time, as of right, file a written motion requesting the trial judge to release him or to correct the sentence which he is then serving upon the ground that his confinement or restraint was imposed in violation of the Constitution or laws of the United States or of the Commonwealth of Massachusetts." This rule "consolidates two formerly separate remedies, writ of error and habeas corpus, with the motion for a new trial," *Commonwealth* v. *Lupo,* 394 Mass. 644, 647 (1985), and it is the "exclusive vehicle for postconviction relief." *Leaster* v. *Commonwealth,* 385 Mass. 547, 549 (1982). See also Reporters' Notes to Mass.R.Crim.P. 30, Mass. Ann. Laws, Rules of Criminal Procedure at 482 (1979); Bellefontaine, Post-Conviction Remedies Under the Rules of Criminal Procedure 66 Mass.L.Rev. 173, 177 (1981).

It was noted but not decided in *Hennessy* v. *Superintendent, Mass. Correctional Inst., Framingham,* 386 Mass. 848, 852 n.3 (1982), that, "[t]o the extent that St. 1979, c. 344, § 12, purports to eliminate completely a court's power 'to issue a writ of habeas corpus . . . for . . . a person who is imprisoned or restrained of his liberty pursuant to a criminal conviction,'

it may run afoul of . . . [Part II, c. 6, art. 7]" of the Constitution of the Commonwealth, which guarantees that the "writ of habeas corpus shall be enjoyed in this commonwealth in the most free, easy, cheap, expeditious and ample manner . . . ." This issue was recently decided in *McCastle, petitioner,* 401 Mass. at 107, where the court concluded that "there is no constitutional impediment to restricting . . . [the petitioner] to rule 30 relief." There, in reliance upon *Hennessy* v. *Superintendent, Mass. Correctional Inst., Framingham, supra,* the petitioner argued that rule 30 was not as complete or sufficient a remedy as habeas corpus, since the motion could be denied, "thus forcing him to appeal," and "rule 30 does not 'require a speedy disposition.' " *McCastle, petitioner,* 401 Mass. at 107.

It has been stated that "[t]he long standing rule of the Commonwealth is that exceptions do not lie from an issuance of the writ of habeas corpus. See *Wyeth* v. *Richardson,* 10 Gray 240, 241 (1857)." *Pina* v. *Superintendent, Mass. Correctional Inst., Walpole,* 376 Mass. at 664. On the other hand, Mass.R.Crim.P. 30(c) (8), 378 Mass. 902 (1979), provides that "[a]n appeal from a final order under this rule may be taken to the Appeals Court by either party." We are aware that in *McCastle, petitioner,* the petition was denied, whereas in the instant case the writs issued. We do not think that this distinction (and the fact that in this case the respondents claimed the appeal) requires a different answer to the question whether limiting the petitioners to rule 30 relief is an unconstitutional restriction.

In the first instance, the rule enunciated in *Wyeth* v. *Richardson,* 10 Gray at 241 ("The great purpose of the writ of habeas corpus is the immediate delivery of the party deprived of personal liberty. The allowance of exceptions would be inconsistent with the object of the writ"), was in respect to a writ which had issued pursuant to the statutory predecessor to R.L. c. 191, § 1 (1902) (now G. L. c. 248, § 1), and not R.L. c. 191, § 25 (1902) (now G. L. c. 248, § 25). Further, the court noted that its conclusion was "confirm[ed]" by statutory provisions, all of which are either predecessors to G. L. c. 248, § 1, or relate to that section rather than to § 25. *Wyeth* v.

*Richardson,* 10 Gray at 242. Moreover, we note that G. L. c. 248, § 1, calls for a petitioner's "release" if his imprisonment or restraint "proves to be unlawful" and makes no provision for bail. Although St. 1979, c. 344, § 12, limits the grounds for issuing a writ under G. L. c. 248, § 25, the amendment leaves undisturbed a judge's power, upon granting the petition, either to grant bail or to discharge the petitioner, and Mass.R.Crim.P. 30(c) (8) (A), 378 Mass. at 902, provides that, "[i]f an appeal is taken[,] . . . [t]he defendant shall not be discharged from custody pending final decision upon the appeal; provided, however, that the defendant may, in the discretion of the judge, be admitted to bail pending decision of the appeal."

If there is a difference between the relief afforded by rule 30(a) and that obtained under § 25 prior to St. 1979, c. 344, § 12, it is that rule 30(c) (8) (A) prohibits the discharge of a defendant in the event that the Commonwealth exercises its right of appeal from an order in the defendant's favor. However, a petitioner never had an absolute right to be discharged upon the issuance of a writ under § 25. It was for the judge to determine whether the petitioner was to be admitted to bail *or* to be discharged. As the prohibition against discharge set out in rule 30(c) (8) (A) in no way infringes upon a judge's power to grant the rule 30(a) motion and release a defendant from confinement by admitting him to bail, a defendant loses no rights guaranteed by Part II, c. 6, art. 7, of the Constitution of the Commonwealth.

A judge's power to issue a writ to a defendant imprisoned pursuant to a criminal conviction has not been eliminated or diminished by St. 1979, c. 344, § 12. That power previously conferred by G. L. c. 248, § 25, is now found, intact, in rules 30(a) and 30(c) (8) (A).[3]

---

[3] Where a rule 30(a) motion is brought on a basis such as that here presented, we see no need that it be presented to the trial judge rather than to any other judge of the trial court. Compare *McCastle, petitioner,* 401 Mass. at 107.

III. *Motion to Dismiss the Appeals.*

Relying upon G. L. c. 248, § 24,[4] the petitioners argue that these appeals must be dismissed as moot because, even if the judge's orders were erroneous, there is no right of appeal from the issuance of a writ as they cannot be required to serve the remainder of their sentences. The respondents ask that if we conclude that the appeals are moot, we nonetheless express our views on whether good time credit forfeitures may be challenged under G. L. c. 248. The respondents anticipate that many of the inmates disciplined by the board for participating in the demonstration are awaiting the expiration of their original GCD dates in order to obtain orders for their immediate release and discharge from custody. They argue that, in the circumstances presented, the question is one which is "capable of repetition, yet evading review." *Wolf* v. *Commissioner of Pub. Welfare,* 367 Mass. 293, 298 & n.7 (1975).

It follows from what we have said in part II, *supra,* that the judge had no authority to issue the writs and to release the petitioners under G. L. c. 248. Section 24 is, therefore, inapplicable to the petitioners, and these appeals are not moot.

IV. *The Respondents' Appeal.*

Although the judge gave no explanation for issuing the writs, it is implicit in his orders that he concluded that the board and the commissioner improperly ordered the forfeiture of the petitioners' good time credits. The respondents first argue that the petitioners have waived their right to question the forfeitures because they did not seek judicial review of the board's action by commencing actions for relief in the nature of certiorari within sixty days of the board's ruling.[5] See G. L. c. 249, § 4.

---

[4] Section 24 reads: "No person who has been discharged upon a habeas corpus shall be again imprisoned or restrained for the same cause, unless indicted therefor, convicted thereof, or committed for want of bail by a court of record having jurisdiction of the cause; or unless, after a discharge for defect of proof or for some material defect in the commitment in a criminal case, he is again arrested on sufficient proof and committed by legal process."

[5] The limitation period in which an action in the nature of certiorari may be brought under G. L. c. 249, § 4, was reduced from two years to sixty days by St. 1986, c. 95.

We find no authority for the proposition that the petitioners' exclusive remedy was relief in the nature of certiorari. As we read *Nelson* v. *Commissioner of Correction,* 390 Mass. 379, 388 n.12 (1983), *Hill* v. *Superintendent, Mass. Correctional Inst., Walpole,* 392 Mass. 198, 199 n.2 (1984), and *Cepulonis* v. *Commissioner of Correction,* 15 Mass. App. Ct. 292, 293 (1983), the crucial question is not when judicial review is sought but why it is sought. "[A] complaint for declaratory relief is an appropriate way of testing the validity of regulations or the propriety of practices involving violations of rights, which are consistent and repeated in nature." *Nelson* v. *Commissioner of Correction,* 390 Mass. at 388 n.12. It is not, however, an appropriate remedy where the validity of an adjudication by the board in an individual case is being challenged. There relief in the nature of certiorari is to be sought. *Hill* v. *Superintendent, Mass. Correctional Inst., Walpole,* 392 Mass. at 199 n.2; *Cepulonis* v. *Commissioner of Correction,* 15 Mass. App. Ct. at 292. The importance of the distinction is not found in the label attached to the pleading, that is, declaratory relief under G. L. c. 231A, certiorari pursuant to G. L. c. 249, § 4, or rule 30(a) motion for postconviction relief; rather, the nature of the grievance will determine the scope of judicial review. Where the challenge is to the board's determination in an individual case, as in *Hill* and *Cepulonis,* no matter the description given the action by the defendant, the question to be answered is whether the board's decision is supported by substantial evidence. *Murphy* v. *Superintendent, Mass. Correctional Inst., Cedar Junction,* 396 Mass. 830, 833 (1986); *Cepulonis* v. *Commissioner of Correction,* 15 Mass. App. Ct. at 295-296. In no event is the defendant entitled to a "hearing de novo in the Superior Court concerning the propriety of the conduct of his individual disciplinary hearing." *Nelson* v. *Commissioner of Correction,* 390 Mass. at 388 n.12, citing *Cepulonis* v. *Commissioner of Correction,* 15 Mass. App. Ct. at 293.

As we read the primary allegation raised by the petitioners concerning the board's action, it raises more a question of law than an attack on the sufficiency of the evidence in support

of the board's action. At issue is whether the time limit in which to file a disciplinary report on an inmate pursuant to 103 Code Mass. Regs. § 430.08(2) (1986)[6] may be waived under 103 Code Mass. Regs. § 430.21 (1986).[7]

Disciplinary reports were filed against the petitioners on May 18, 1987, after prison administrators and security personnel had reviewed videotapes of the demonstration. Four days later, on May 22, the superintendent of MCI, Norfolk, waived all time limits pertaining to the petitioners' reports. The waivers, reports, and notice of hearings were served on the petitioners on May 27, fourteen days after commission of the offenses set out in the reports.

As we construe the petitioners' argument it is that the time limit imposed under § 430.08 cannot be waived, and, in the alternative, if there can be a waiver, it must be made within the original time period established by § 430.08. Because of the improper waivers, they say, all that followed was invalid.

Simply put, we see no merit in the claim. By the express language of § 430.21, the "procedural time limits" set out in § 430.08(2) are "directory" rather than mandatory. Compare *Royce* v. *Commissioner of Correction,* 390 Mass. 425, 427-428 & n.5 (1983). In the circumstances here presented (a demonstration involving between 200 and 250 inmates, the evacuation of all nonsecurity personnel, and numerous inmate tranfers to restore order), we see nothing arbitrary or unreasonable in the respondents' interpretation and use of § 430.21. See generally *Wolff* v. *McDonnell,* 418 U.S. 539, 563-567 (1974).

The petitioners also contend, but without vigor, that the board acted without sufficient evidence before it. Based upon

---

[6] Section 430.08 concerns the "[d]etection and [r]eporting of [d]isciplinary [o]ffenses." Paragraph (2) of this section reads: "Where informal handling is not appropriate an employee who has reason to believe that a disciplinary offense has been committed by an inmate shall write a disciplinary report and file it with the shift commander or other person designated by the superintendent before the completion of his tour of duty."

[7] Section 430.21 provides: "All procedural time limits set forth in these rules and regulations are directory and may be modified by the superintendent or the commissioner."

our review of the materials presented in the record appendix, we conclude that there was substantial evidence before the board to support its recommendation, in each instance, that the petitioners' good time credits be forfeited. See *Murphy* v. *Superintendent, Mass. Correctional Inst., Cedar Junction,* 396 Mass. at 833. The board had before it the testimony and written reports of the prison guards as well as a videotape made of the prison quadrangle area at 2:30 P.M. on May 13, 1987. This evidence demonstrated that the prison guards saw both the petitioners in a group of approximately 200 inmates who were chanting "unity," "work strike," and "Attica."

V. *Conclusion.*

Treating the petitions as motions brought under Mass.R. Crim.P. 30(a), we conclude that it has not been shown that the commissioner's forfeitures were unlawful. The petitioners, therefore, were not entitled to relief. The judgments are vacated and an order is to be entered in each case denying the motion for postconviction relief.

*So ordered.*